UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEURON SPACE CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>BLUE CUBED, LLC,<br><br>  Defendant. | Case No.  25-cv-06649-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Docket No. 5 |

Plaintiff Neuron Space Corporation has filed suit against Defendant Blue Cubed, LLC, asserting claims for, *inter alia*, breach of contract, trade secret misappropriation, and false designation or origin.  Now pending before the Court is Neuron's motion for a temporary restraining order.  Having considered the papers submitted, the Court hereby **DENIES** the motion for relief.

As an initial matter, Neuron has failed to establish that there is a need for emergency relief. *Cf. Ratliff v. JP Morgan Chase Bank N.A.*, No. 17-cv-02155-EMC, 2017 U.S. Dist. LEXIS 226249, at *3 (N.D. Cal. Apr. 25, 2017) (stating that a "delay in seeking relief warrants denial of a TRO").  Neuron suggests that it only "recently" became aware that Blue Cubed had (as alleged) disclosed confidential information to third parties.  Mot. at 7.  However, there is no concrete evidence as to when Neuron became aware of such.  The Husseini Declaration is vague on this point.  *See, e.g.*, Husseini Decl. ¶ 17 ("I have personally heard from other industry participants that Blue Cubed has disclosed, without Neuron's consent, confidential information about the Neuron Lasercom Terminal to third parties in an effort to gain business that should belong to Neuron.").  Furthermore, Blue Cubed has provided evidence suggesting that Neuron either knew or should

1  have known of the alleged disclosure far earlier.  *See, e.g.*, Palto Decl. ¶¶ 10-34 (testifying that
2  Blue Cubed was showing its terminal at trade shows in, *e.g.*, 2024, and providing information
3  about its terminal on its website in 2024).
4     Furthermore, Neuron has failed to show that it is entitled to a TRO based on the traditional
5  equitable factors of "(1) a likelihood of success on the merits; (2) a likelihood of irreparable harm
6  to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the
7  moving party's favor; and (4) that an injunction is in the public interest." *Id.*
8     Neuron has not yet shown that the balance of hardships tips sharply in its favor.  *See id.*
9  (noting that, "[u]nder the Ninth Circuit's 'sliding scale; approach, the first and third elements are
10 to be balanced such that 'serious questions' going to the merits and a balance of hardships that
11 'tips sharply in favor of the movant are sufficient for relief so long as the other two elements are
12 also met").  Neuron suggests irreparable injury or hardship because there has been some confusion
13 about whether Blue Cubed or Neuron is the owner of the terminal at issue.  But the evidence of
14 confusion is vague.  *See* Husseini Decl. ¶ 20 ("I have already heard from several contacts in the
15 industry who have been confused about the Blue Cubed displays of the Neuron Terminal and Blue
16 Cubed holding itself out as the owner of this design.").  Moreover, Neuron has failed to
17 sufficiently explain at this juncture how simply displaying the terminal at a trade show could
18 reveal confidential information.  *See* Husseini Decl. ¶ 21 ("Viewing the Neuron Lasercom
19 Terminal in person can reveal certain features that Neuron considers to be its confidential and
20 proprietary information.  And often at conferences, particularly where Blue Cubed indicates it will
21 demonstrate the 'tech in action,' customers or competitors will be able to ask and may receive
22 valuable insight into the Neuron IP.").  In contrast, Blue Cubed has provided more concrete
23 evidence indicating that it would be harmed if it were prevented from showing the terminal at
24 issue at the upcoming trade show.  *See* Palo Decl. ¶ 35 ("Blue Cubed has invested thousands of
25 dollars in exhibitor fees, booth equipment, and nonrefundable travel plans for the Small Satellite
26 Conference happening next week.  We have also lined up at least nine meetings with prospective
27 partners and customers.").  Given the potential harm resulting from the possible disruption at the
28 incipient stage of Blue Cubed's business, the Court cannot say that the balance of hardships tips

sharply in favor of Neuron. Thus, Neuron would have to establish it is likely to succeed on the merits to obtain relief.

Neuron has, thus far, failed to show such likelihood of success. If Blue Cubed has disclosed, at most, information about its own property only, and not Neuron's, Neuron would have no viable claim. There appears to be a dispute about whether the terminal at issue (or what portions thereof) constitutes Blue Cubed's property or Neuron's (or possibly, in part, a third party's). Moreover, there is a substantial dispute about whether Neuron itself or its partners have already disclosed information that Neuron is claiming to be confidential. Blue Cubed has submitted evidence of this.

Accordingly, the Court denies Neuron's motion for a temporary restraining order. However, the Court shall deem Neuron's opening brief in support of its motion for a temporary restraining order as a motion for a preliminary injunction and shall set the preliminary injunction motion for hearing on **September 11, 2025, at 1:30 p.m.** Blue Cubed shall file an opposition by August 21, 2025, and Neuron shall file a reply by August 28, 2025.

Finally, the Court shall grant the motions to seal filed by the parties. However, it emphasizes that, in so ruling, the Court is not making a merits-based determination that any information is confidential. Rather, it is sealing in order to preserve any confidentiality rights that Neuron has, should it ultimately prevail on the merits. It is without prejudice to the Court's authority to unseal the motions.

This order disposes of Docket No. 5.

**IT IS SO ORDERED**.

Dated: August 10, 2025

_____
EDWARD M. CHEN
United States District Judge

3